ROBERT J. BOKERN ET AL., APPELLANTS, v. R. ELLIOTT SCEARCE, DIREC-TOR OF PERSONNEL OF THE CITY OF ST. LOUIS ET AL., RESPONDENTS. —174 S. W. (2d) 355.

St. Louis Court of Appeals. Opinion filed October 5, 1943.

*Fred Armstrong* and *Aubrey B. Hamilton* for appellants.

528

*Charles P. Williams* for respondents R. Elliott Scearce, Director of Personnel, Daniel N. Kirby, Luther Ely Smith and Paul J. Kaveney, Members of the Civil Service Commission.

ANDERSON, J.—In this suit plaintiffs, all of whom are members of the St. Louis Fire Department, sought an injunction against defendants, all of whom are officials of the City of St. Louis, to restrain defendants from interfering with plaintiffs' alleged status as permanent employees in the classified service of the city of St. Louis; from refusing to permit plaintiffs to discharge the duties of such position; and from refusing to compensate plaintiffs for such services. The trial court, after hearing, denied the relief prayed for, and entered a judgment dismissing the bill. From that judgment, plaintiffs brought this appeal.

Whether appellants are entitled to the relief sought depends upon a construction of certain sections of Article XVIII of the City Charter, which sections were adopted as an amendment to the City Charter by the people of St. Louis at an election held September 16, 1941. Article XVIII, as originally enacted in 1914, contained provisions for the establishment of a so-called merit system, among which provisions was one for the appointment by the Mayor of an Efficiency Board of three members to administer the system; another dividing the service of the city into an unclassified and classified service; and another authorizing the Efficiency Board to prescribe rules for the classified services. These rules were to provide: (a) For the classification and standardization of all positions in said service; (b) for competitive examinations to test the relative fitness of applicants for position in the classified service and reasonable regulations concerning promotion; (c) for rejection of candidates who failed to comply with reasonable requirements as to age, residence, sex, physical condition, and moral character; (d) for certification to the appointing authority, as occasion might require, from appropriate eligible lists, the names of the three persons standing highest on said list; (e) for temporary employment for not exceeding sixty days, without examination, in the absence of an eligible list; (f) for transfer from a position to a similar position in the same grade, and for reinstatement on the eligible list of persons separated from the service or reduced in rank through no fault or delinquency on their part; (g) for appointment of unskilled laborers; and (h) for investigating and keeping records of the efficiency of those in the classified service, and for requiring reports relative thereto from appointing officers.

Section 5 of the Act provided that the Efficiency Board should maintain a list of all persons in the city service, showing the position

held, the date and character of appointment, and every subsequent change of status.

Section 6 provided that all examinations should be practical and impartial and relate solely to matters which would reasonably test the ability of the person to perform the duties of the position sought.

Section 7 provided that the appointing officer might suspend or discharge or reduce in rank or compensation any officer or employee under him, with or without cause, except as otherwise by the charter provided; but should furnish to such employee a written statement of the reasons therefor, and file a copy of same with the Efficiency Board.

Section 8 provided that no appointment or promotion in the classified service should be made except from names certified by the Board.

Section 12 provided that no person in the classified service or seeking admission thereto should be appointed, reduced, suspended, discharged, or in any way favored or discriminated against because of his political or religious opinions or affiliations.

The amendment to the charter struck out old Article XVIII, and replaced it with a new Article XVIII, which new Article XVIII provided: for a Department of Personnel, consisting of a Civil Service Commission of 3 members appointed by the Mayor and a Director of Personnel, likewise appointed by the Mayor; for the adoption, amendment, and uninterrupted operation of a systematic classification plan; and for the framing and recommendation of a systematic compensation plan, with properly related scales of pay and of amendments thereto.

The amendment was intended to create for the classified service of the city a true civil service system, which required all appointments and promotions to be on the sole basis of merit and fitness, and which required all rates of pay to be fair and equitable, with like pay for like work, and suitable differences in pay for differences in work.

The amendment further provided, among other things, that to give effect to the purpose and requirements set forth in the act, the civil service rules required by said act to be adopted should provide for indefinite tenure of employment in positions in the classified service, except in cases for which definite terms were prescribed by law, and except in cases of temporary appointment, but with due provision for layoff on termination of the need for employment in any position, or of funds available therefor.

The powers and duties of the Commission, defined by Section 7 of the act, briefly are as follows: (a) To prescribe rules for the administration of the act; (b) to recommend to the mayor and aldermen ordinances for: (1) a compensation plan providing proper scales of pay for all grades of positions, and rules for its interpretation and application; (2) a plan for retirement of superannuated and otherwise incapacitated employees; (3) regulation of hours of duty, holidays, attendance, and absence; (4) such other matters within the

scope of said article as require action by the mayor and aldermen; (5) such changes in such matters from time to time as may be deemed warranted; (c) to make investigations regarding the administration of the act, and of ordinances and rules adopted in accordance therewith, and to make recommendations to the director and to the mayor and aldermen as may be warranted; (d) to consider matters involved in the enforcement of said article and the rules and ordinances adopted in accordance therewith referred to it for decision by the director of personnel, or on appeal by any appointing authority, employee, or taxpayer from any act of the director or of any appointing authority; (e) to hold an examination for Director of Personnel, and to certify eligibles resulting therefrom to the mayor; (f) to transmit to the mayor and aldermen such annual and special reports as the Director of Personnel may submit for action; (g) to order reinstatement without loss of pay to any employee discharged, demoted, or reduced in rank or compensation for religious, racial, or political reasons.

By Section 9, the Director of Personnel is given the power and duty: (a) To serve as secretary of the Commission, see to the keeping of the minutes and records thereof, and conduct investigations and prepare reports for the Commission in matters under its consideration; (b) to appoint and direct all employees of the Department of Personnel; (c) to establish and maintain a roster of all city employees; (d) to recommend rules, for action by the Commission, including a classification plan, a service rating plan, and drafts of ordinances for recommendation to the mayor and aldermen in matters requiring such ordinances, including a compensation plan; (e) to allocate and reallocate positions in the classification plan adopted under the provisions of the act; (f) to prepare definitions of classes and grades in the classification plan; (g) to hold examinations, pass upon the qualifications or applicants, and establish eligible lists as needed, and to certify names of eligibles to appointing authorities for filling vacancies in competitive positions; (h) to cooperate in providing programs of training for employees, for employee welfare, for promoting employee morale, etc.; (i) to pass upon, for compliance with the provisions of the charter, ordinances, and rules, and approve or disapprove as to compliance therewith all appointments, demotions, transfers, promotions, service ratings, leaves of absence, changes in rates of pay, suspensions, separations, and other employment transactions affecting the status of employees; (j) to make investigations with respect to the enforcement and effect of the personnel provisions of the charter, ordinances, and rules, and such other investigations as the Commission or mayor might request; (k) to devise and recommend to the Commission a compensation plan; (l) to make administrative regulations relative to matters involved in the administration of the personnel provisions of the charter, ordinances, and rules; (m) to make annual reports to the Commission on the work of the Department and the

administration of said Article, with such recommendations as he might deem desirable; (n) to aid the mayor, aldermen, and appointing officers, in determining the number and kinds of positions needed to carry on the city's business, and in discovering unnecessary positions so that they might be eliminated; (o) to aid the mayor, aldermen, and appointing authorities in handling other personnel matters; (p) to do all other things necessary and proper for making effective the provisions of the article and all rules and ordinances adopted in pursuance thereof.

Under this paragraph it was also provided that the power of the Director to make effective and provisions of the article and of ordinances should not be deemed to be contingent on the adoption of rules, but, in the absence of applicable rules, he had the power to take such action, not inconsistent with the article or with ordinances pursuant thereto, as might be reasonably necessary and proper to effectuate the purposes of the article.

Section 12 of the amendment provided as follows:

"Sec. 12. *Status of Employes at the Time of the Taking Effect of this Article.*—Every person who, when this Article takes effect, is legally occupying, by regular appointment thereto, a position placed by this Article in the classified service, shall be entitled to continue to occupy such position, without further examination for such employment, and shall become subject to the provisions of this Article, including the provisions relating to service rating, with the same effect as though he had been appointed to the position occupied, under the provisions of this Article. The provisions of this section also shall apply to all persons who, on the date of acquisition of any public utility hereafter acquired by the City, are regularly employed by such utility."

Section 30 of the amendment provided as follows:

"Sec. 30. *Time of Effect.* This amendment shall take effect immediately, except that payrolls may be certified and payments be made thereon, under the provisions of previously existing Charter provisions, and ordinances and rules, applicable thereto, during such temporary period not to exceed one year as is necessary, in the opinion of the Civil Service Commission, to provide for the Director of Personnel, the rules, the classification and compensation plans, the ordinances, the allocation of the existing positions to their appropriate classes and the fixing of the rates of compensation thereunder, and the forms and procedures necessary for full compliance with the provisions of this Article."

The Mayor, pursuant to authority given him by the Act, on October 15, 1941, appointed defendants Daniel N. Kirby, Luther Ely Smith, and Paul J. Kaveney as members of the Civil Service Commission, and on August 15, 1942, appointed defendant R. Elliott Scearce as Director of Personnel. The Civil Service Commission, on September

15, 1942, issued its proclamation that the "Department of Personnel, said Commission and the duly appointed and acting Director of Personnel are now functioning in their respective capacities, pursuant to the amended Article XVIII of the Charter of the City of St. Louis; that the offices of said Department, Commission, and Director are open and transacting business on the Ninth Floor of the Civil Courts Building on Twelfth and Chestnut in the City of St. Louis, Missouri.''

Until September 15, 1942, the Commission and Director devoted themselves solely to organization work, and did nothing in the way of administering amended Article XVIII except to approve on August 27, 1942, the re-enactment of the classification ordinance.

During the year from September 16, 1941, to September 15, 1942, the Efficiency Board, pursuant to the opinion of the City Counsellor, continued to function and perform those duties intrusted to it by old Article XVIII of the charter, and the Civil Service Commission acted on the assumption that the powers of the Efficiency Board were carried over by it during that period.

On February 25, 1942, and on March 4, 1942, defendants McBride and Morgan made written requests to the Efficiency Board for names from the eligible list for the Fire Department, from which 48 appointments of privates, Class A, in the Fire Department, could be made. Thereafter, 144 names were submitted, and appointments, including the 41 plaintiffs herein, were made on March 17, 1942, from said list so submitted. The said eligible list, from which plaintiffs' names were taken, had been compiled prior to September 16, 1941, by the Efficiency Board, in accordance with the provisions of the then charter provisions, ordinances, and rules governing appointments of members of the Fire Department. Under the Charter, ordinances, and rules of the Efficiency Board, in force at the time said list was compiled, privates, Class A, of the Fire Department were in the classified service, and appointments could be made only from an eligible list supplied by the Efficiency Board. By ordinance, recommended by the Department of Personnel, this same classification was established for said positions under the amended charter provisions.

The plaintiffs here all qualified immediately upon their appointments, and had (with the exception of Belsick, who resigned), up to the time of the hearing below, served and been paid as privates, Class A, in the Fire Department.

Thereafter, the Department and Director of Personnel determined that before the plaintiffs could legally become members of the classified service, they should be required to take a competitive examination and be subject to the results thereof with respect to priority of rating. Accordingly, a notice was issued and published that a competitive examination would be held for privates, Class A, in the Fire Depart-

ment. At the request of the Director of Personnel, the plaintiffs were notified by their chief that they would have to take the examination, but would get credit for their experience. This suit followed.

The precise legal question here involved is whether or not persons appointed to positions subsequent to September 16, 1941, and prior to September 15, 1942, from eligible lists certified by the Efficiency Board, are under Section 12 of the amendment entitled to continue to occupy such position without further examination for such employment.

Section 12 exempts from competitive examination only those persons occupying positions in the classified service "when this Article takes effect." Section 30 provides for the immediate taking effect of the amendment except for the certification of payrolls and payments thereon during a temporary period, not to exceed one year, necessary for the selection of a Director of Personnel and the drafting of rules, classification and compensation plans, etc., necessary for full compliance with the provisions of the ordinance. Nothing in the exception applies to plaintiffs herein, and since they were not employees at the time the amendment took effect, they are not entitled to the relief sought. We are compelled to this conclusion by the decision of our Supreme Court in State ex rel. Pedrolie v. Kirby, 349 Mo. 1010, 163 S. W. (2d) 964. In that case, the relators were members of the classified service at the time of the adoption of the Civil Service Amendment, and were discharged for political reasons, contrary to the provisions of the amendment. They appealed to the Civil Service Commission, but it refused to consider their appeals on the theory that it lacked jurisdiction because the amendment giving it authority to hear appeals was not in full force and effect. Relators then applied for *mandamus* to compel the Commission to take jurisdiction of the appeals. For support of its position, the Commission relied on Section 30, which provides a temporary period not to exceed one year for the performance of certain duties necessary for full compliance with the terms of the amendment. The Court found against the Commission's contention, and held that the law became effective upon its adoption, September 16, 1941, and that the right of the employee to hold his position free of discrimination, and to be reinstated without loss of pay, as provided by the amendment, vested immediately upon the adoption of the amendment, and that he was entitled to the remedy provided by the amendment.

As to the exception in Section 30, extending certain of the provisions of the previously existing charter provisions, ordinances, and rules applicable thereto, during a temporary period, not exceeding one year, the court said:

"Interwoven in the various terms of the amendment are provisions related to the audit and certifications of payrolls and payments thereunder. There is, for instance, a prohibition against paying a person

until his position has been classified and allocated by the director. There being no director as yet no salary could be paid. Necessity requires that payrolls be met promptly. It was to cover such a situation that the exception was made so as to permit salary payments under the provisions of the old system. We find nothing in the exception which applies to the matter in issue here.''

In view of the foregoing, we have reached the conclusion that no one appointed after September 16, 1941, to a position which has been designated as a part of the classified service, has any absolute right to continue to occupy such position without further examination.

The judgment of the trial court is affirmed. *Hughes, P. J.,* and *McCullen, J.,* concur.